UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:20-CR-00014-JHM

UNITED STATES OF AMERICA                                                                    PLAINTIFF

V.

CHRISTOPHER RALEY                                                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's motion to suppress evidence in his criminal case. [DN 15]. Fully briefed, this matter is ripe for decision. For the following reasons, motion is DENIED.

**I.  BACKGROUND**

The Owensboro Police received a call with a report of gunshots fired at the 231 Motel in the early morning hours of August 9, 2019. [DN 28 at 1]. The caller, located in Room 107, said they heard someone firing a gun "upstairs." [DN 15 at 2]. Two policemen—Officers McKinney and Davis—promptly arrived at the motel to respond. While canvassing the upstairs and downstairs areas, the officers noticed a spent shell casing and a holster inside of a gray Cadillac parked in front of the motel. [DN 28 at 1–2]. The officers then knocked on a door located in front of the vehicle, Room 108, to conduct a welfare check. While the occupant did not initially answer, once Officer McKinney identified himself, the Defendant (Raley) opened the door to speak with the officers. [DN 28 at 2]. The Defendant informed the officers that the vehicle parked in front of the room was his. Officer McKinney told the Defendant that he and Officer Davis were there responding to a report of a gunshot, and the Defendant said he had nothing to do with it nor did he possess a gun. *Id.*

1

Officer McKinney testified at the suppression hearing that he asked the Defendant "Well, can I come in and search your room to make sure you don't have a gun?" *Id.* According to the testimony of both Officer McKinney and Officer Davis, the Defendant immediately consented to the search of his room. *Id.* After obtaining consent, Officer McKinney located a bag of methamphetamine and a firearm in the freezer of the room (Defendant is a convicted felon and thus prohibited from possessing a firearm). *Id.* The officers both testified that the Defendant never revoked his consent to search the room, and that at no point during the search was the Defendant handcuffed or placed into custody. *Id.* The Defendant was only handcuffed after the firearm and contraband were found. *Id.* at 2–3.

Mr. Raley's testimony was quite different. At the hearing, he testified that he did not open the hotel door, but rather it was apparently opened by the hotel manager who was standing outside alongside not two, but several uniformed police officers. [DN 30 at 6]. Mr. Raley testified that he was immediately and forcibly removed from the room and placed in handcuffs. *Id.* He denies that he ever provided consent to the officers to search his room before they came in and found the firearm and drugs. *Id.*

After searching the room, the officers searched the vehicle. But at the evidentiary hearing, although both officers testified that they "believed" the Defendant gave consent to search the car, neither officer could recall to whom the consent was given. [DN 28 at 3]. Officer McKinney was unclear on whether he remembered hearing the Defendant give consent at all. [DN 30 at 7]. In the vehicle, the officers found one spent shell casing, a nylon holster, ammunition, and more suspected contraband. [DN 15]. Around that time, a third officer, Detective Adamson, arrived on the scene and the Defendant was subsequently arrested. Detective Adamson escorted the Defendant back to the police station for questioning. Defendant

Raley was informed of his *Miranda* rights and signed a waiver of those rights before answering Adamson's questions.

The United States indicted Raley with one count of possession with intent to distribute methamphetamine (50 grams or more) and one count of possession of a firearm by a prohibited person. [DN 1]. Defendant filed a motion to suppress the evidence of the firearm and methamphetamine, arguing that the warrantless search of his hotel room violated his Fourth Amendment rights. He also asks this Court to suppress the subsequent testimonial evidence obtained during his conversation with Detective Adamson as fruits of the poisonous tree.

## II. DISCUSSION

Consent is an exception to the Fourth Amendment's search warrant requirement, but only if it is voluntarily and intelligently given. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). Courts determine whether consent is freely and voluntarily given by looking to the totality of the circumstances. *Id.*; *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Guimond*, 116 F.3d 166, 170 (6th Cir. 1997). The government has the burden, by a preponderance of the evidence, to show through "clear and positive testimony" that valid consent was obtained. *United States v. Riascos-Suarez*, 73 F.3d 616, 626 (6th Cir. 1996). "[T]here is no 'magic' formula or equation that a court must apply to determine whether consent was validly and voluntarily given." *United States v. Worley*, 193 F.3d 380, 387 (6th Cir. 1999).

### A. Search of the hotel room

The government has satisfied its burden to show that the officers obtained consent from Mr. Raley to search his hotel room. The United States offered two officers to testify at the hearing. Both officers' testimonies corroborated each other's regarding the basic facts that: (1) the officers did not use intimidation or coercive tactics when knocking on Mr. Raley's door as

3

part of their response to the report of gunshots, (2) Officer McKinney asked for Mr. Raley's consent to search his room, and (3) that Mr. Raley answered by granting the officers that consent. Although Mr. Raley's testimony is completely opposite to the officers', his recollection lacks the benefit of any corroborating evidence or witness accounts. As such, Raley's testimony is given less evidentiary weight by the Court.

Raley's statement granting consent as described by the officers' testimony strongly suggests that his consent was made freely and voluntarily. There is no indication in the record that Mr. Raley did not understand what he was doing when he gave consent. "[W]here the government purports to rely on a defendant's statement to establish that valid and voluntary consent was rendered, we must examine the content of that statement to ensure that it 'unequivocally, specifically, and intelligently' indicates that the defendant consented." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). The officers testified that when Officer McKinney asked Raley if he could come into the room to see if Raley had any guns, Raley responded along the lines of "yeah, go ahead" (per McKinney), or "yes, you can come inside" (per Officer Davis). [DN 19 at 30]. Nothing in Raley's response suggests that Mr. Raley gave consent involuntarily or unknowingly. He responded to a specific question about searching the room for firearms and gave a direct, unequivocal answer in the affirmative. Accordingly, Mr. Raley's statement as described by the officers is sufficient to show consent by the preponderance of the evidence.

The Defendant points out some inconsistencies among the testimonies of Officer McKinney and Davis. For example, Officer McKinney testified that Raley stepped outside the room when giving consent, whereas Davis testified that Raley remained inside the room. [DN 30 at 18–19]. Additionally, Officer Davis did not mention Raley and McKinney's discussion of

4

the vehicle parked outside. [DN 30 at 18–19]. These inconsistencies are minor and immaterial to the issue of establishing consent, especially considering that the officers were recalling an interaction that occurred about three years earlier.

Defendant alternatively argues that the officers' "knock and talk" was unjustified under case law and that they used unduly coercive measures to obtain Raley's consent. Defendant cites to *U.S. v. Jones*, 641 F.2d 425 (6th Cir. 1981), a case where the Sixth Circuit reversed a district court's decision not to suppress evidence from a search due to evidence that although the suspect's girlfriend consented, the consent was induced by "[t]he overpowering police presence, the kicking and banging of the door, [and] the assertion of lawful authority" such that the girlfriend "had no real choice other than to let the police search." *Id.* at 429. But the benign request for consent described in the officers' testimony in this case is quite different from the coercive conduct depicted in *Jones*. Officers McKinney and Davis each testified, under oath, that there was no such overpowering police presence. To the contrary, there were only two officers who asked Mr. Raley to open the door, which he did, and requested permission to search the room. Although Mr. Raley testified that the officers banged on his door and that someone other than himself opened the door, the preponderance of the evidence presented to the Court at the suppression hearing favors a finding that Mr. Raley was properly approached and asked for consent. He could have refused the officers' request and revoked his consent to search, but at no point during the search did he elect to do so. [DN 28 at 2].

Additionally, the Defendant argues that the officers lacked probable cause or reasonable suspicion to knock on Mr. Raley's room. But the officers did not need probable cause or reasonable suspicion to do so. Knocking on the front door of a home or hotel room to speak with an occupant as part of a welfare check when responding to a public safety threat is not a search

5

under the Fourth Amendment. Such "knock and talks" are permissible so long as the encounter is consensual. *See Smith v. City of Wyoming*, 821 F.3d 691, 713 (6th Cir. 2016); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required."). Defendant cites to Sixth Circuit case law providing that a consensual encounter at the front door can exceed the bounds of a "knock and talk" and become a "constructive entry" when the police "deploy overbearing tactics that essentially force the individual out of the home" or use coercive authority in such a way "that the [d]efendant reasonably believed he had no choice but to comply." *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). But considering the totality of the circumstances and the testimony provided to the Court, the evidence weighs in favor of a finding that no such coercion took place. The government has shown through "clear and positive testimony" that consent was obtained absent such a showing of force, *Riascos-Suarez*, 73 F.3d at 626, and that consent was "uncontaminated by duress, coercion, or trickery." *United States v. Scott*, 578 F.2d 1186, 1188–89 (6th Cir. 1978).

The Defendant suggests in his briefing that the officers acted improperly when they "would not leave the door even after [Raley] told them … that he was not involved in the shots fired." [DN 30 at 23]. The Defendant goes on: "[i]nstead, undeterred … Officer McKinney insisted on asking Mr. Raley to search the room." *Id.* But there is no legal authority to suggest that this was improper police conduct. If Mr. Raley had told the officers to go away or leave him alone after denying involvement in the gunshots, or explicitly refused consent when asked, this would be a conceptually different question. But Mr. Raley never did such a thing, and it is certainly not out of bounds for the police to knock on someone's hotel door when responding to

a call of gunshots fired at said hotel, especially after seeing a holster and spent shell casings inside of a car parked outside the person's room, and to further ask consent to search the person's room even if that person denied involvement in the shooting. Knocking on Defendant's door and asking him a few questions did not place him under arrest or detention and does not constitute overbearing force. Nothing about the conduct that the officers testified to here was unduly coercive or violative of the Fourth Amendment.

Finally, Defendant cites to *United States v. Williams*, 650 F. Supp. 2d 633, 672 (W.D. Ky. 2009), a case in this district where the court found that the government had not satisfied its burden of proving the voluntariness of consent when the testimony of a police officer was diametrically opposed and contradicted by another's testimony. But in *Williams* only one officer testified that consent was obtained, and his testimony was, per the court, "conclusory at best." *Id.* Conversely, in this case two officers gave corroborating testimony on the issue of consent and, while uneven on some minor details, recalled sufficient information to support their testimony that consent was obtained after they knocked and asked.

B. The search of the vehicle

If police do not have a warrant to search an automobile and the containers within it but do have probable cause to believe the automobile contains contraband or other evidence of criminal activity, they may search it. *California v. Acevedo*, 500 U.S. 565, 580 (1991). The inherent mobility of the vehicle justifies such a warrantless search if probable cause exists. *See Pennsylvania v. Labron*, 518 U.S. 938, 949 (1996) ("[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment … permits the police to search the vehicle without more."). In this case, the police had neither a warrant nor consent to search the Defendant's car (the testifying officers could not remember how consent was

allegedly obtained or to whom it was granted). However, because the officers had just uncovered evidence of criminal activity in the Defendant's room—the gun and the drugs—they had probable cause to *then* search Defendant's vehicle for more evidence of this kind. Officer McKinney's knowledge that Defendant was prohibited from possessing a firearm as a convicted felon further gave the officers probable cause to search the vehicle for additional evidence of firearm possession. Accordingly, the evidence from the Defendant's vehicle will be admitted.

### C. Defendant's statements to Detective Adamson

Defendant argues that the statements he subsequently made after his *Miranda* waiver should also be suppressed as fruit of the poisonous tree. But because the Court has held that the preceding searches of the motel room and the vehicle were lawfully executed as exceptions to the warrant requirement, the Defendant's statements to law enforcement after being taken in for questioning are not fruits of the poisonous tree. Importantly, as the record shows, Defendant waived his *Miranda* rights when agreeing to answer Detective Adamson's questions and knowingly and voluntarily signed a waiver to that effect. [DN 28-1].

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Raley's motion to suppress [DN 15] is DENIED. Defendant's motion to file excess pages [DN 29] is GRANTED.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

July 20, 2022

cc: Counsel of Record